

FILED
GREAT FALLS DIV.

'06 JUN 2 AM 11 32

PATRICK E. ..... CLERK
BY
DEPUTY CLERK

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF MONTANA

### GREAT FALLS DIVISION

| | |
|---|---|
| ABDUL AMEER YOUSEF HABEEB, | |
| Plaintiff, | No. CV 05-24-GF-SEH |
| vs. | **MEMORANDUM and ORDER** |
| THOMAS CASTLOO, DARRYL ESSING, TOM HARDY, ROBERT L. FINLEY, and THEODORE V. DENNING, in their individual capacities, | |
| Defendants. | |

## INTRODUCTION

Plaintiff, Abdul Ameer Yousef Habeeb (Habeeb), brought this action, alleging

Defendants, Thomas Castloo (Castloo), Darryl Essing (Essing), Tom Hardy (Hardy), Robert L.

Finley (Finley), and Theodore V. Denning (Denning), in their individual capacities, violated his

Fourth and Fifth Amendment rights. The Court has jurisdiction under 28 U.S.C. §§ 1331, 1343,

1391, and 2201.

Defendants have moved for judgment on the pleadings, or in the alternative, for summary

judgment on qualified immunity grounds. All parties have submitted matters outside the

1

pleadings in support and in opposition to the motions. Material facts relevant to the qualified immunity issue are not in dispute.[1] Resolution of the motion as one for summary judgment is in order.[2]

The standard for assessment of a motion for summary judgment is not disputed. Summary judgment is appropriate if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates the absence of genuine issues of material fact and that the movant is entitled to judgment as a matter of law. Fairbank v. Wunderman Cato Johnson, 212 F.3d 528, 531 (9th Cir. 2000); Fed. R. Civ. P. 56(c). The movant bears the initial burden of establishing the absence of genuine issues of material fact. Fairbank, 212 F.3d at 531. Once that burden is met, the nonmoving party must set forth specific facts rising to the level of genuine issues and, in doing so, may not rely on mere allegations contained in the pleadings. Fed. R. Civ. P. 56(e); Fairbank, 212 F.3d at 531; Farm Credit Bank of Spokane v. Parsons, 758 F. Supp. 1368, 1372 (D. Mont. 1990). The material facts are summarized below.[3]

---

[1] Plaintiff acknowledged at the May 12, 2006, motions hearing the qualified immunity issue to be "quite appropriate" for ruling.

[2] Fed. R. Civ. P. 12(c) provides, in pertinent part:
> [I]f, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material pertinent to such a motion by Rule 56.

[3] The pleadings have been supplemented by 10 declarations. Eight of the declarants are self-identified as former Amtrak passengers, none of whom were on the train that stopped in Havre, Montana, on April 1, 2003, and none of whom have knowledge of material facts relevant to the specific qualified immunity issue before the Court.

2

## FACTS

Habeeb, an alien originally from Iraq, was admitted to the United States as a refugee on July 8, 2002. On April 1, 2003, he was en-route by train to Washington, D.C. from his home in Washington state. The train made a scheduled stop in Havre, Montana. Habeeb got off the train and entered the station. Before reboarding the train, Habeeb was approached by Castloo, an agent of the Customs and Border Patrol, United States Department of Homeland Security (CBP), and was asked by Castloo where he was from. Habeeb apprised Castloo he was from Iraq. Castloo asked him for his immigration papers. Habeeb produced a copy of an I-94 form.

Shortly thereafter, Essing, also an agent of the CBP, approached Habeeb and Castloo. Upon learning Habeeb was an alien from Iraq, Essing asked Habeeb whether he had gone through "special registration." Habeeb indicated he had not. At that point, Castloo and Essing took Habeeb into custody. His bags were removed from the train. He was detained overnight and questioned further about his alien status by Castloo, Essing, and other federal agents.

On April 2, 2003, Essing issued a Notice to Appear, charging that Habeeb "'failed to appear for special registration on or before February 7, 2003, as mandated by the order of Attorney General published in the Federal Register.'" (First Amended Compl. at ¶ 3.10 (Mar. 31, 2005)(Complaint).) Habeeb was placed in removal proceedings and was held for three nights in the Hill County, Montana, jail.

Habeeb was transported by plane to Seattle, Washington, on April 3, 2003, where he was held for four nights in a United States Immigration and Customs Enforcement Agency (ICE) detention facility. He was released from custody on April 9, 2003. Removal proceedings were formally terminated on May 16, 2003.

3

## CLAIMS ASSERTED

Habeeb asserts three claims against Defendants under <u>Bivens v. Six Unknown Named</u> <u>Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388 (1971).[4]  First, he alleges that Defendants denied him the right to be free from unreasonable searches and seizures in violation of Fourth Amendment rights.  Second, he contends Defendants denied him the right not to be deprived of liberty or property without due process of law, in violation of the Fifth Amendment.  Third, he asserts Defendants denied him the right to equal protection in violation of the Fifth Amendment.

## DISCUSSION

Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation . . . ."  <u>Mitchell v. Forsyth</u>, 472 U.S. 511, 526 (1985).  A ruling on qualified immunity "should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive."  <u>Saucier v. Katz</u>, 533 U.S. 194, 200 (2001).

Whether an official claiming qualified immunity may be held personally liable for an allegedly unlawful official action turns on the objective legal reasonableness of the assessed action in light of legal rules that were clearly established at the time it was taken.  <u>Anderson v.</u> <u>Creighton</u>, 483 U.S. 635, 639 (1987).  A defendant's subjective intent is irrelevant to the qualified immunity defense.  <u>Crawford-El v. Britton</u>, 523 U.S. 574, 588-89 (1998).

The threshold question is: "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?"  <u>Saucier,</u> 533 U.S. at 201.  This Court must determine "the existence or nonexistence of a constitutional

---

[4]The court, for purposes of Defendants' qualified immunity motion, will assume, but does not decide, that Plaintiff may maintain an action under <u>Bivens</u>.

4

right as the first inquiry." Id. In determining that issue, it may be "necessary to set forth principles which will become the basis for a holding that a right is clearly established." Id. If Defendants' actions would have violated no constitutional right, qualified immunity should be granted. Id.

## I.    Fourth Amendment Claims

Habeeb argues that when Castloo approached him and asked where he was from, and was later joined by Essing, the officers acted without reasonable suspicion that Habeeb was in violation of an immigration law and thus in violation of his Fourth Amendment rights.[5]  The officers' actions were, in fact, lawful. Habeeb has failed to show a Fourth Amendment constitutional right violation. Castloo and Essing are entitled to qualified immunity as to all of Habeeb's Fourth Amendment claims.

### A.    The Investigatory Stop

An alien, regardless of whether his or her presence in this country is temporary or lawful, is entitled to certain constitutional protections. Plyler v. Doe, 457 U.S. 202, 210 (1982).  The Fourth Amendment protects against unreasonable searches and seizures. U.S. Const. amend IV. In appropriate circumstances, its protections apply to aliens even if the alien's presence is unlawful. See Orhorhaghe v. I.N.S., 38 F.3d 488 (9th Cir. 1994).

An encounter between an officer and an individual that communicates to a reasonable

---

[5] While not pleaded in the Complaint, Plaintiff in his response brief, and orally at the May 12, 2006, motion hearing, has asserted a malicious prosecution claim, apparently grounded in the Fourth Amendment. Any such claim is subsumed by the Court's Fourth Amendment ruling. Furthermore, even the most liberal reading of Plaintiff's Complaint, as required by Fed. R. Civ. P. 8, cannot be said to put Defendants on notice of any type of malicious prosecution claim.

person that the person is at liberty to ignore the officer's conduct and go about his business, is not a "seizure." The Fourth Amendment is not implicated. See Orhorhaghe, 38 F.3d at 494; Terry v. Ohio, 392 U.S. 1, 16 (1968). "Law enforcement agents have the 'liberty (again, possessed by every citizen) to address questions to other persons, for ordinarily the person addressed has an equal right to ignore his interrogator and walk away.'" Orhorhaghe, 38 F.3d at 494 (quoting Terry, 392 U.S. 1, 32-33).

Factors to be considered in determining whether a seizure has occurred include: (1) the number of officers and their threatening presence; (2) whether the officers were carrying weapons; (3) the setting of the encounter; and (4) the manner in which the officers acted. Orhorhaghe, 38 F.3d at 494-96. All those factors demonstrate that Habeeb was not seized when the officers approached and questioned him at the station.

The events took place in an open, public train station. Habeeb has not asserted he was cornered or otherwise restrained. He does not say he was threatened or coerced. He asserts no more than that Castloo and Essing "approached" him and "demanded" to see his immigration papers. There are no allegations that Habeeb was even aware of the presence of weapons. He has not alleged that either officer told him he was not free to leave. There is no evidence that either impeded his ability to walk away. This record shows no more than that Castloo and Essing performed routine law enforcement work by exercising their liberty to address questions to other persons.

Even if it be assumed, which the Court has expressly declined to find, that Castloo and Essing did seize Habeeb, the seizure was lawful under the Fourth Amendment. Congress has granted border protection officers express, unique authority to act within Fourth Amendment

6

constraints.  Under  8 U.S.C. § 1357(a)(2000), Border Patrol officials have the power, without

warrant,

> (1) to interrogate any alien or person believed to be an alien as to his right to be or to remain in the United States; [and]
>
> . . . .
>
> (3)  within a reasonable distance from any external boundary of the United States, to board and search for aliens any vessel within the territorial waters of the United States and any railway car, aircraft, conveyance, or vehicle . . . .

A "reasonable distance" is that territory within 100 air miles from any external boundary of

the United States.  8 C.F.R. § 287.1(a)(2).  The authority to interrogate contained in 8 U.S.C. §

1357(a) is constitutional.  Mienke v. U.S., 452 F.2d 1076, 1077 (9th Cir. 1971); Fernandez v.

U.S., 321 F.2d 283 (9th Cir. 1963).  In Fernandez, the court directly declared: "[t]his statute

represents congressional recognition of the right of the United States to protect its own

boundaries against the illegal entry of aliens and is, we think, clearly constitutional."  Fernandez,

321 F.2d at 285 (footnote omitted).

The Supreme Court has identified a number of factors to be taken into account when

deciding whether a border protection officer has reasonable suspicion to stop and interrogate an

individual.  They include: (1) the characteristics of the area and its proximity to the border; (2)

usual patterns of traffic in the area; (3) previous experience with alien traffic; and (4) information

about recent illegal border crossings in the area.  U.S. v. Brignoni-Ponce, 422 U.S. 873, 884-85

(1975).  "In all situations the officer is entitled to assess the facts in light of his experience in

detecting illegal entry and smuggling."  Id. at 885 (citing Terry, 392 U.S. at 27).  Castloo and

Essing had a reasonable suspicion to approach and question Habeeb.  8 U.S.C. § 1357(a);

Brignoni-Ponce, 422 U.S. 873.

Castloo and Essing's actions, likewise, were lawful under the authority granted by 8 U.S.C. § 1357(a)(3).  Havre, Montana, and the train station at which the encounter occurred are located some 45 miles south of the Canadian border.  The officers were geographically within the statutory authority prescribed for board and search of the train for aliens.  To give any meaning to the statute, border protection officials must be able to conduct a search.  Common sense dictates that in conducting a search for aliens under §1357(a)(3), officers must be able to question persons on the train as to country of origin and to ask such persons for identification.

The purpose of 8 U.S.C. § 1357(a)(3) plainly would be defeated if officers were obliged to confine their searches to railway cars only and could not search for aliens in areas immediately adjacent to the train, particularly in a case such as was presented here, where passengers were permitted to get off during the scheduled stop, and Habeeb, in fact, did get off.  Questioning of Habeeb on his way back to the train constituted a lawful search under 8 U.S.C. § 1357(a)(3).

Furthermore, the agents' actions were lawful under 8 U.S.C. § 1357(a)(1), which grants the CBP the authority to "interrogate any . . . person believed to be an alien . . . ."  While interrogation may generally connote a detentive situation, Zepeda v. U.S. I.N.S., 753 F.2d 719, 726 (9th Cir. 1983), it is a reality that to determine a person's citizenship (prior to the detentive interrogation stage), in almost all conceivable scenarios, the officer must question a person about his or her alienage.  Such questioning is innocuous, routine border enforcement procedure.  A question as to alienage does not, by itself, turn an encounter into a seizure.  Rather, the question is but one form of information gathering, just as important as information obtained by sight or other senses.

8

To conclude that the CBP officers did not have the authority under 8 U.S.C. § 1357(a)(1) to question Habeeb about his identity and alienage in context of the circumstances of the case would totally eviscerate the statute. Congress, in enacting § 1357(a)(1), intended to authorize exactly what the statute says—namely, that the officers had the authority to question Habeeb, as they did, about who he was and about where he was from. That action, carried out in compliance with statute, simply cannot be said to have violated Habeeb's Fourth Amendment rights.

Moreover, it cannot be overlooked that the law is well settled that principles of Fourth Amendment exclusionary law do not apply to civil deportation proceedings. I.N.S. v. Lopez-Mendoza, 468 U.S. 1032, 1051 (1984). It is also well established that a person's identity is beyond the pale of suppression on Fourth Amendment grounds. Lopez-Mendoza, 468 U.S. at 1039-40; U.S. v. Del Toro Gudino, 376 F.3d 997, 999-1002 (9th Cir. 2004). Habeeb is in no position to claim, as is at least implicit in his assertions to this Court, that the officers lacked constitutional authority to even inquire as to his identity.

Castloo and Essing are entitled to qualified immunity as to Habeeb's allegations that they violated his Fourth Amendment rights when they approached and questioned him at the Havre, Montana, train station. Dismissal of the claim is appropriate.

**B.     Arrest and Custody**

Habeeb next alleges his Fourth Amendment right to be free from unreasonable searches and seizures was violated when the officers took him into custody after he produced a copy of an I-94 form, and disclosed that he had not gone through special registration. Those allegations fail to set forth that a constitutional violation occurred when he was taken into custody.

9

Habeeb was, and is, both an alien and a refugee.[6]  "[A]lien means any person not a citizen or national of the United States." 8 U.S.C. § 1101(a)(3)(2000).  His very presence in the United States was, and is, a matter grounded not in right, but in permission of the sovereign.  Therefore, he was obliged, by law, to have and carry appropriate alien registration documentation.[7]  A form I-94 is a prescribed registration form for aliens. 8 C.F.R. § 264.1(a).

Habeeb's failure to produce an original I-94 form provided probable cause to arrest and take him into custody.  A CBP officer has the authority, without warrant:

> [T]o arrest any alien in the United States, if he has reason to believe that the alien so arrested is in the United States in violation of any such law or regulation and is likely to escape before a warrant can be obtained for his arrest . . . ;

8 U.S.C. § 1357(a)(2)(2000).[8]

The officers had probable cause to believe that Habeeb was in violation of immigration laws when he told Castloo he was from Iraq and failed to produce an original alien registration document.  The argument that Habeeb's refugee status exempts him from the obligation to possess an I-94 form and that production of a copied I-94 could not be considered as evidence of an immigration law violation is unfounded.

Regardless of status, Habeeb was obliged by law to carry original documents. 8 U.S.C. § 1304(e)(2000) explicitly requires an alien to "have in his personal possession" the card "issued to

---

[6] "A refugee is an alien who is unable to return to his home country . . . ." Ding v. Ashcroft, 387 F.3d 1131, 1136 (9th Cir. 2004).

[7] "Every alien, eighteen years of age and over, shall at all times carry with him and have in his personal possession any certificate of alien registration or alien registration receipt card issued to him . . . ." 8 U.S.C. § 1304(e)(2000).

[8] Failure to carry alien registration documentation is also a federal misdemeanor.  8 U.S.C. § 1304(e); Mountain High Knitting, Inc. v. Reno, 51 F.3d 216, 218 (9th Cir. 1995).

him." The plain language of this statute mandates the alien to carry, and produce when asked, the authentic, original document. A copy plainly is not the original nor its legal equivalent. When Habeeb produced a copied I-94 form as his only proof of identification, the officers, without question, had probable cause to arrest him for a potential immigration law violation.

Additionally, Habeeb's failure to conform with the special registration process, prescribed under the National Security Entry-Exit Registration System (NSEERS), constituted probable cause for him to be arrested and taken into custody. Habeeb, as an alien, was subject to 8 U.S.C. § 1303(a)(6). By the terms of that statute, the Attorney General was given authority to prescribe special regulations and forms for the registration and fingerprinting of "aliens or any other class not lawfully admitted to the United States for permanent residence." 8 U.S.C. § 1303(a)(6)(2000). At the time of this incident, the Attorney General had prescribed special regulations under 67 Fed. Reg. 67,766 (Nov. 6, 2002) (the Notice), which defined and outlined NSEERS' registration requirements.

NSEERS applied "to certain nonimmigrant aliens from one of the countries designated in this Notice . . . ." 67 Fed. Reg. 67,766 (Nov. 6, 2002). The program required registration if the alien: "(1) [i]s a male who was born on or before November 15, 1986; (2) [i]s a national or citizen of one of [several countries, including Iraq,] . . . and was last admitted to the United States as a nonimmigrant on or before [September 10, 2002]; and (3) [w]ill remain in the United States at least until December 16, 2002." Id. at (a)(1)(2)(3).

An exception to the registration requirements of NSEERS is carved out by subsection (g)

11

of 67 Fed. Reg. 67,766 for aliens who meet other particular criteria.[9]  Habeeb does not meet the

exception criteria.  Habeeb admits he does not qualify as a nonimmigrant classified under either

8 U.S.C. §§ 1101(a)(15)(A) or 1101(a)(15)(G).  (Plaintiff's Response to Defendants' Motion for

Judgment on the Pleadings or in the Alternative Summary Judgment at 15 (Nov. 21, 2005).

(Plaintiff's Response Brief))  He is not lawfully admitted to the United States for permanent

residence, and does not assert otherwise.  No evidence in the record establishes that he has ever

applied for, or that he has been granted, asylum.[10]

NSEERS registration applies to Habeeb.  He falls squarely within the requirements of

paragraph (a) of the Notice: (1) by his own admission, he is a citizen of Iraq; (2) he is a male

born before November 15, 1986; and (3) he was admitted to the United States on July 8, 2002,

approximately 2 months prior to the September 10, 2002, cutoff date.  Regardless of whether

classified as a nonimmigrant or as an immigrant, Habeeb is clearly an alien.  See Ding, 387 F.3d

at 1136.  As an alien who fits all the major substantive requirements of the Notice and who is not

---

[9] Those criteria are that the alien: (1) be presently a nonimmigrant classified under section 101(a)(15)(A) or 101(a)(15)(G) of the Immigration and Naturalization Act (INA); (2) be lawfully admitted to the United States for permanent residence; or (3) had applied for asylum on or before November 6, 2002, or had been granted asylum under section 208 of the INA.  67 Fed. Reg. 67,766(g)(1)(2)(3).

[10] 8 U.S.C. § 1158 allows an alien, physically present in the United States, to apply for asylum in accordance with certain prescribed procedures.  This section also grants the Attorney General, or the Secretary of Homeland Security, discretion in granting asylum.  Both the statute and case law make it clear, however, that a grant of asylum lies with the discretion of the Attorney General or the Secretary of Homeland Security.

It is important to note that the Attorney General is *not required* to grant asylum to everyone who meets the definition of refugee.  Instead, a finding that an alien is a refugee does no more than establish that "the alien *may* be granted asylum *in the discretion of the Attorney General*." § 208(a) (emphasis added).  See Stevic, 467 U.S., at 423, n. 18 ; see also *infra*, at 441-444.

I.N.S. v. Cardoza-Fonseca, 480 U.S. 421 n.5 (1987).  As stated, no grant of asylum is claimed by Habeeb.  Nor does he claim to ever have sought asylum.

among those classified as exempted, he is subject to NSEERS' requirements.

The policy behind and the stated purpose of NSEERS also require a finding that the program applies to Habeeb. The Notice explicitly states that NSEERS is designed to enhance national security based on intelligence information available following post 9-11 events. Habeeb is precisely the type of alien to whom the Notice applies. He is a male from Iraq, born before November 15, 1986, who has not applied for asylum.

A determination that NSEERS does not apply to Habeeb would be unreasonable, would contravene the purpose of NSEERS, and potentially render it useless, leaving border officials to wade through the definitional intricacies of the INA in order to enforce its mandates in the field. While the Notice is not a model of legal draftsmanship, substance, not form, must govern its application. Substantively, Habeeb overwhelmingly fits within NSEERS' requirements.

Even if NSEERS could arguably be said to not apply to Habeeb, the confusion and uncertainty attendant to an analysis reaching such a conclusion is apparent, and the total absence of existing and definitive court interpretation precludes any determination as a matter of law that exemption was "clearly established." For example, the Notice: (1) is silent as to its application to refugees; (2) uses aliens and nonimmigrants interchangeably; (3) does not list the nonimmigrants to which it applies; and (4) does not distinguish, in any fashion, between immigrants and nonimmigrants. To conclude that NSEERS did not apply to Habeeb and that officers in the field, as reasonable persons, should be charged with knowledge of such, simply says too much.

Plaintiff's reliance on the ICE website declaration that NSEERS does not apply to refugees is misplaced. Information on agency websites does not constitute final agency action reviewable under the Administrative Procedures Act and does not create legally enforceable

13

entitlements.  See Air Brake Systems, Inc. v. Mineta, 357 F.3d 632, 646 (6th Cir. 2004).

Habeeb must show the officers' actions were unreasonable in light of legal rules clearly established when they took the challenged action if he is to defeat the qualified immunity defense.  See Anderson, 483 U.S. at 639.  Here, the language of the Notice, the inconsistencies within the Notice itself, and the total absence of case law speaking to the issue, all indicate that whether NSEERS applied to refugees at the time Castloo and Essing arrested Habeeb was, at a minimum, unclear.  Under such circumstances, Castloo and Essing simply cannot be said to have been unreasonable in their decision to arrest and detain Habeeb for failing to comply with NSEERS.

In sum, Habeeb has failed to show that the officers violated any of his clearly-established Fourth Amendment rights, or that their actions were objectively legally unreasonable.  Castloo and Essing are entitled to qualified immunity as to all of Habeeb's Fourth Amendment claims.

## II.    Fifth Amendment Claims

Habeeb claims Defendants violated his Fifth Amendment due process rights when they placed him in custody, questioned him, placed him in removal proceedings, and transported him to the ICE detention facility in Seattle, Washington.  He also alleges that Defendants violated his Fifth Amendment equal protection rights when they demanded to know where he was from based solely on his race or ethnicity.  Defendants are entitled to qualified immunity with respect to all of these Fifth Amendment allegations.

### A.    Due Process

An alien detainee has "a constitutional right to be free from continued detention after it was or should have been known that the detainee was entitled to release."  Lee v. City of Los

14

Angeles, 250 F.3d 668, 683 (9th Cir. 2001) (quoting Cannon v. Macon County, 1 F.3d 1558, 1563 (11th Cir. 1993)). Until that point is reached, however, an alien subject to removal proceedings may be detained. 8 U.S.C. § 1226(a).

8 U.S.C. § 1357(a)(2)(2000) provides that an arrested alien "[s]hall be taken without unnecessary delay for examination before an officer of the Service having authority to examine aliens as to their right to enter or remain in the United States." Section 287.3 of Title 8 of the Code of Federal Regulations further governs disposition in cases of aliens arrested without warrant, and outlines the regulatory due process afforded aliens arrested without a warrant.

Pertinent provisions of the regulatory due process include: (1) the alien must be examined by an officer other than the arresting officer, unless such a qualified officer is not available; (2) the examining officer must refer the case to an immigration judge if the officer is satisfied there is prima facie evidence that the alien is in the United States in violation of an immigration law; (3) once the alien is placed in formal proceedings, the alien must be advised of his rights, the reasons for his arrest and the right to be represented at no expense; and (4) a determination as to "whether the alien will be continued in custody or released on bond or recognizance and whether a *notice to appear* and warrant of arrest . . . will be issued." 8 C.F.R. § 287.3(a)(b)(c)(d)(2006) (emphasis added). Habeeb received all due process afforded by law.

Habeeb acknowledges that shortly after his arrest, Castloo and Essing issued a Notice to Appear, charging him with failure to appear for special registration. (Complaint at ¶ 3.9.) Habeeb was detained and he was transported to an ICE detention facility in Seattle, Washington, three days later to continue with deportation proceedings. All substantive procedures outlined by 8 C.F.R. § 287.3 were observed.

15

To the extent Habeeb alleges that his due process rights were violated when Castloo and Essing examined him, his argument is baseless. He defeats his own argument by acknowledging that he "was questioned" by Castloo and Essing *and additional federal agents.*" (Complaint at ¶ 3.8) (emphasis added).)

Habeeb has failed to allege a violation of his Fifth Amendment due process rights. Castloo, Essing and all other Defendants implicated by Habeeb's Fifth Amendment due process allegations are entitled to qualified immunity.

### B.    Equal Protection

Aliens are entitled to equal protection under the law. See Yick Wo v. Hopkins, 118 U.S. 356 (1886). The United States may not invidiously discriminate between individuals or groups. Plyler, 457 U.S. at 210. Nevertheless, an officer conducting an investigatory stop, may, in light of his training and experience, make use of a person's appearance. Brignoni-Ponce, 422 U.S. at 885-87; U.S. v. Ortiz, 422 U.S. 891, 897 (1975). An official act is not unconstitutional solely because it is claimed to have a discriminatory impact. Washington v. Davis, 426 U.S. 229, 239 (1976). A plaintiff must also allege purposeful discrimination. Harris v. McRae, 448 U.S. 297, 324 n. 26 (1980).

Habeeb has not demonstrated a violation of Fifth Amendment equal protection rights. His initial questioning, as discussed above, was within the authority granted by a constitutionally-sound statute, 8 U.S.C. § 1357. Fernandez, 321 F.2d at 285. That authority alone rendered Castloo's and Essing's actions lawful. No officer can be found to have violated a constitutional right by taking action authorized by a constitutionally-valid federal statute.

Moreover, Habeeb's bald assertion that Castloo questioned him based solely on his race

or ethnicity is insufficient to plead a constitutional violation. See Crawford-El, 523 U.S. at 588. He has not put forth a single fact tending to show, even in the most favorable light to Habeeb, that Castloo, or any Defendant, acted with a discriminatory purpose. Habeeb has not alleged that Castloo made any untoward comments, or in any way indicated that he was singling out Habeeb. He asserts no more than Castloo "questioned" him, and with no more than a subjectively-drawn conclusion that the questioning was based solely on his race or ethnicity.

To find constitutional merit in Habeeb's claim would blatantly disregard the reality that law enforcement officers must, and are entitled to, rely upon the observed behavior, personal characteristics and appearances of others every day in meeting their responsibilities. It would be absurd for this Court to declare that law enforcement personnel, and border protection officers in particular, were acting unconstitutionally if they availed themselves of their ability to distinguish between people based on appearance. It is equally unwarranted to conclude that officers who relied upon appearance as a factor in determining they were entitled to inquire of a person as to his or her identity or right to be in, or remain in, the United States, or in assessing whether a person had violated a law, were *ipso facto* acting unconstitutionally. Any such conclusion would have a chilling effect upon fundamentally-reasonable and appropriate law enforcement efforts, and would effectively and unrealistically prohibit border protection officers from carrying out the responsibilities assigned to them by law. Furthermore, such a conclusion would unjustifiably limit officers in questioning, arresting, or otherwise encountering any person who outwardly appears to be from a foreign country, regardless of circumstances.

An officer's taking into account or reliance upon appearance or ethnicity in a given case does not, without more, convert the enforcement officer's actions into a constitutional violation.

17

The proposition itself is not only constitutionally unsupported, it is unrealistic and a potentially dangerous insult to the right of the United States to protect its own boundaries and to afford to all the right to the protection and security of its sovereignty, constitution, and laws.

Habeeb has failed to show a violation of his Fifth Amendment equal protection rights. Defendants are entitled to qualified immunity with respect to Habeeb's allegations that Castloo, or any other Defendant, violated his equal protection rights.

### III.   Habeeb's Claims Against Hardy, Finley and Denning

Habeeb alleges "Defendants Hardy, Finley, and Denning, with deliberate indifference [to Plaintiff's constitutional rights,] . . . failed to adequately and properly train and supervise Agents Castloo and Essing," and such failure was a proximate cause of the injuries suffered by Habeeb. (Complaint at ¶ 3.14.) The claims against these Defendants are without merit.

Supervisors cannot be held liable in a constitutional tort under the doctrine of *respondeat superior*. Terrell v. Brewer, 935 F.2d 1015, 1018 (9th Cir. 1991). Likewise, vicarious liability is not available in a Bivens action. Monell v. Dept. of Social Services of New York, 436 U.S. 658, 691-08 (1978). Generally, the law under 42 U.S.C. § 1983 and the law governing Bivens claims are parallel in their treatment of supervisory liability. Del Raine v. Williford, 32 F.3d 1024, 1047 (7th Cir. 1994).

"A supervisor is only liable for constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and failed to act to prevent them." Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989). Supervisory officials may be liable in their individual capacity for: (1) their "'own culpable action or inaction in training, supervision, or control of [their] subordinates;'" (2) "'acquiesce[nce] in the constitutional

18

deprivations of which [the] complaint is made;'" (3) "'or for conduct that showed a 'reckless or

callous indifference to the rights of others.'" Larez v. City of Los Angeles, 946 F.2d 630, 646

(9th Cir. 1991)(quoting Clay v. Conlee, 815 F.2d 1164, 1170 (8th Cir. 1987); Meade v. Grubbs,

841 F.2d 1512, 1528 (10th Cir. 1988)(citation omitted); Bordanaro v. McLeon, 871 F. 2d 1151,

1163).

A failure to train claim succeeds "only where the failure to train amounts to deliberate

indifference to the rights of persons with whom the police come into contact." City of Canton v.

Harris, 489 U.S. 378, 388 (1989). Deliberate indifference "is a stringent standard of fault,

requiring proof that a municipal actor disregarded a known or obvious consequence of his

action." Board of County Comm'rs of Bryan County v. Brown, 520 U.S. 397, 410 (1997). A

showing of simple or even heightened negligence is not enough. Id. at 407.

Habeeb's claims against these Defendants fail on two distinct grounds. First, Habeeb has

failed to demonstrate that Castloo's or Essing's actions amounted to constitutional violations of

either the Fourth or Fifth Amendment. Likewise, he has failed to show that Castloo or Essing

acted unreasonably in violation of any constitutional right. Hardy, Finley, and Denning cannot be

liable for participating, directing, or failing to prevent a constitutional violation when none has

occurred. Second, even had Habeeb properly asserted constitutional violations against Castloo

and Essing, he has made only bald, conclusory assertions against Hardy, Finley and Denning,

devoid of *any* factual support. In light of the stringent standard of fault required to show

deliberate indifference, such allegations fall far short of a proper claim. Moreover, Hardy, as

Director of Field Operations, had no supervisory or training authority over the Office of Border

Patrol, or any of its agents, as they are two separate entities within the CBP. (Defendant Thomas

19

Hardy's Declaration in Support of Motion for Judgment on the Pleadings or in the Alternative

Summary Judgment on Qualified Immunity (October 13, 2005).) Hardy, Finley, and Denning are

entitled to qualified immunity.

### ORDERED

1.      Defendants' motion for summary judgment on qualified immunity grounds as to

all claims is GRANTED. The Clerk is directed to enter judgment accordingly.

2.      All other pending motions are DENIED as moot.

DATED this 2nd day of June, 2006.

SAM E. HADDON
United States District Judge

20